**LOCKETT, Plaintiff-Appellee, v. ANCHOR MOTOR FREIGHT Co., Defendant-Appellant.**

Ohio Appeals. Seventh District, Mahoning County.

No. 3328.   Decided January 12, 1950.

Clyde W. Osborne, J. Richard Andrews, Youngstown, for plaintiff-appellee.

Manchester, Bennett, Powers & Ullman, Youngstown, for defendant-appellant.

**OPINION**

By PHILLIPS, PJ.

In this opinion the parties will be called plaintiff and defendant respectively.

Defendant, a corporation engaged as a licensed common carrier of merchandise and freight by truck, appealed to this court on questions of law from a judgment of the court of common pleas entered upon a jury verdict for plaintiff, in his action filed in that court to recover damages from defendant for personal injuries and damage to his truck caused by one of defendant's trucks colliding with his truck at the intersection of Ohio State Routes 45 and 18 in North Jackson, Mahoning County, "about a quarter to one" P. M., on

September 20, 1947, allegedly as the result of the careless and negligent operation of such truck by one of defendant's agents, servants and employees.

Plaintiff, aged 55 years, who was operating his truck, loaded with 7½ tons of slag, in a southerly direction over and along Ohio State Roue 45 into the intersection of that highway with Ohio State Route 18, about 25 miles an hour, (estimated by a State Highway Patrolman at 50 miles an hour) testified that he never saw defendant's truck until it was about 50 feet distant from his truck and it was in Route 18; that he did not apply his brakes nor divert the course of his truck, "kept straight"; that the light turned green in his favor when he was about 200 feet away from it, and traveling about 15 miles an hour; that when he saw defendant's truck he didn't stop because "I knew stopping would do no good," and had no "knowledge at any time that he (the driver of defendant's truck) wasn't going to stop and respect the red light."

Defendant's truck, loaded with four Chevrolet automobiles, was travelling in an easterly direction on Route 45 at about fifty miles an hour, according to plaintiff; and thirty miles an hour, as estimated by a state highway patrolman.

One of plaintiff's witnesses, who saw the collision at close range, testified that he saw the truck of plaintiff, whom he referred to as the Preacher, first when it was 60 feet distant from the intersection where the collision occurred, travelling 30 miles an hour, at which time "he had the right of way"; that "the truck (defendant's) came through the light and the Preacher, they were almost together there, and the truck driver and the truck, just like going down 45 to avoid hitting him, and the Preacher tried to do the same, and as he done that both front ends met, and the way he had turned just as soon as he hit the body upset and all the stuff went in there and he turned over" (sic); that "the light was red when the truck was going through"; that the drivers of both trucks alighted from their trucks immediately and plaintiff addressed the driver of defendant's truck "'what is the matter with you, man?', he says, 'didn't you see what you were doing, going through the light?', and the fellow says 'don't holler at me' he says 'I didn't have no brakes and I couldn't stop.'"

Defendant's only witness, who was not the driver of its truck, testified that the trucks of the respective parties collided at about the time the duly authorized and installed automatic signal light, which controls traffic moving over and along those highways, was changing into caution; "and there was a caution, and the driver coming from the north,

he had caution too, and our driver started on through, and this tractor was already through the intersection, and this gentleman hit the trailer part of it, coming through; and I don't judge they were going over forty miles an hour, they was going about thirty-five; I could tell that because I was standing there watching."

Over the defendant's objection, the trial judge permitted plaintiff to testify that the driver of defendant's truck told him "immediately" after the collision, "he told me he had no brakes"; that his brakes were faulty, which condition he reported to his employer before the collision; that his employer instructed him to stop at a garage and have them repaired, and "then come on it"; that in obedience to those instructions he stopped at a garage and had some work done on such brakes.

Again over defendant's objection, the trial judge permitted a state highway patrolman, who arrived at the scene of the collision about a half hour subsequent thereto, to testify that the driver of defendant's truck told him the traffic control light was changing as he approached the point of collision; and that he attempted to stop, but that the brakes with which the truck was equipped "did not function."

Over defendant's objection, the trial judge permitted another of plaintiff's witnesses to testify to a conversation he overheard, in which the driver of defendant's truck inquired "what do you expect me to do? I didn't have any brakes; they didn't work. I called in about it and they told me to try to make it through."

Counsel for defendant contend that the trial judge erred in permitting the introduction of such testimony because the alleged statements of the driver of defendant's truck were not part of the res gestae, but were statements made after the happening of the collision of the trucks of the parties in response to questions asked him as to why he did not stop.

Counsel for defendant states by brief:—

"In view of the fact that its driver did not appear, defendant could only defend the action upon the theory that even assuming negligence upon its part, the plaintiff himself could and should have stopped his own truck and avoided the accident, and because he didn't do so, he was contributorily negligent.

"* * * Every law suit is prosecuted on a theory and every law suit is likewise defended on a theory. It is perfectly obvious that the defendant defended this law suit only upon

the theory that the plaintiff was guilty of contributory negligence in failing to stop his own truck after he knew or should have known that the defendant's truck was not going to stop. In his charge the court did not clearly present this theory to the jury. He dealt only with an abstract proposition of law."

Counsel are referred to the following authorities:—

"There is no doubt that where evidence of an act done by a party is admissible, his declarations made at the time, explanatory of the act and tending to elucidate it, are also admissible as a part of the res gestae. But it is only where some act is itself relevant and material, and to which the declarations relate, and which they tend to explain, that they become competent." **The Union Central Life Insurance Co. v. Cheever, 36 Oh St 208.**

"The admissibility of a statement under the doctrine of res gestae depends upon its having been spontaneous or impulsive. It need not be strictly contemporaneous with the incident to which it relates, but should be in the nature of an exclamation and not a narrative of a past event." **Bake v. Industrial Commission of Ohio, 135 Oh St 627.**

"This court has had occasion in comparatively recent cases to define and apply the res gestae rule. The element of time in the relation of a statement to the occurrence in question, though important, is not controlling. The statement, to be admissible, need not be strictly contemporaneous with the incident to which it relates, but should be in the nature of an exclamation, and its competency depends primarily upon having been spontaneous or impulsive and not a narrative of a past event.

"As stated in the syllabus of the case of State v. Lasecki, supra, 'the doctrine of res gestae, as applied to exclamations, should have its limits determined, not by the strict meaning of the word 'contemporaneous,' but rather by the causal, logical or psychological relation of such exclamations with the primary facts in controversy.' " **Bake v. Industrial Commission of Ohio, 135 Oh St 630.**

"The general rule is that evidence of the statement by the party injured declaring the circumstances of the injury, made a considerable time after the happening, is hearsay and inadmissible, but where the statement is made immediately after the injury, in the presence of the person testifying, who asserts the circumstances as observed by him, this evidence constitutes an exception to the hearsay rule and is admissible (3 Wigmore on Evidence, Section 1746). Many cases where

the courts have admitted such evidence, are cited by this excellent author, some on the ground that the statements were a part of the res gestae, some under the verbal-act doctrine, as being a part of the principal fact, and some as an exception to the hearsay rule." Taylor v. Industrial Commission, 13 Oh Ap 264.

"It is fundamental that statements which are so identified with a transaction as to constitute verbal acts are admissible as a part of the res gestae, but to make them admissible the statements must be contemporaneous with the transaction which they explain. The word 'contemporaneous,' however, should not be limited to its strict meaning, but its limits should be determined rather by 'the causal, logical, or psychological relation of such exclamations (or statements) with the primary facts in controversy.'" Liberty Highway Co. v. Callahan, 24 Oh Ap 383.

"A declaration made by the assured immediately after the accident as to the accident is competent evidence, and its admission does not constitute prejudicial error, especially where the accident is shown by other evidence." United States Casualty Co. v. Thrush, 21 Oh Ap 130.

We conclude that the trial judge did not err to defendant's prejudice as charged in this assigned ground of error.

Further it is observed that counsel for defendant did not object, nor except, to the introduction of the evidence of which complaint is made. Rather he proceeded to cross-examine the witnesses, the introduction of whose testimony he complains now, and offered in evidence one of plaintiff's exhibits concerning defendant's brakes, by which he waived any claimed error in the introduction of evidence. See Macaluso Fruit Co. v. Commercial Motor Freight, Inc., 57 N. E. (2d) 692.

Counsel for defendant urges that the trial judge "erred in refusing to charge the jury on the defendant's theory of the case"; and in refusing to charge the jury in response to his request made at the conclusion of the general charge to the jury "that if the plaintiff, in the exercise of ordinary care, either discovered, or could have discovered, that the defendant's truck could not stop, or was not going to stop, and the plaintiff, himself, thereafter, in the exercise of ordinary care, could have brought his own truck to a stop and avoided the accident, the plaintiff may not recover."

In response to the request of counsel for defendant the trial judge said, correctly we believe, "some of the elements in that are correct and some are not. It cannot be given. Is that all."

Defendant's counsel did not object, nor except, to the court's refusal to charge as counsel for defendant requested. Further, the trial judge in his general charge charged on the subject of such request. No further comment on this branch of the assigned ground of error under discussion is necessary. Clearly the trial judge did not err to defendant's prejudice in refusing to charge as requested by defendant's counsel.

Now counsel for defendant contends that the trial judge erred "in not granting a new trial because the verdict of the jury was not only excessive, but was rendered under the influence of passion and prejudice"; and argues by brief that "the jury must have reached it (its verdict) while under the influence of passion or prejudice."

We will not lengthen this opinion unduly by detailing the nature nor extent of plaintiff's injuries and disability, other than to say that plaintiff's hearing is permanently impaired; "I just can't hear good any more"; that he has a roaring sensation in his head; that he sustained multiple contusions and bruises in such collision which have been cured and corrected, and he was in the hospital for 31 days; that he suffers from a permanent back injury; wears a brace, which restricts the motion of the back to 30% of normal, and will never again be able to do heavy lifting nor bending; and is permanently disabled. Further the evidence discloses that his truck, which was worth $1500.00, was damaged to the extent of $1150.00; that he was earning $300.00 a month at the time of collision, and has earned nothing since, and is advised he will never be able to earn $300.00 a month again.

There is nothing in the bill of exceptions submitted to us for review leading us to believe that the jury rendered its verdict while under the influence of passion or prejudice. However, considering plaintiff's injuries, which it is not necessary to state further, we conclude that the verdict of the jury is excessive to the amount of $4500.00, which if accepted by plaintiff will result in an affirmance of the judgment of the court of common pleas, and if rejected in a reversal thereof.

If such remittitur is accepted within the time prescribed by this court the judgment of the court of common pleas is modified as indicated herein, and as modified is affirmed; and if rejected reversed on the ground that the verdict of the jury and judgment entered thereon are excessive.

NICHOLS, J, concurs in judgment.
BUCKLEY, J, concurs in judgment.